UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHN T. CHESTNUT,

    Plaintiff,

v.    Case No. 3:09-cv-481-J-12MCR

B. HAWKINS, et al.,

    Defendants.

## **ORDER**

### **I. Status**

  Plaintiff John T. Chestnut, an inmate of the Florida penal system proceeding pro se and in forma pauperis, initiated this action by filing a Civil Rights Complaint Form (hereinafter Complaint) (Doc. #1) under 42 U.S.C. § 1983 on May 27, 2009, pursuant to the mailbox rule. He also filed a Memorandum of Law (Doc. #2). In the Complaint, Plaintiff names the following individuals as Defendants in this action: (1) Officer B. Hawkins; (2) Officer R. Bell; and (3) Officer D. N. Askew. Plaintiff claims that the Defendants used unnecessary and excessive force upon him, in violation of the Eighth Amendment of the United States Constitution.

  This cause is before the Court on Defendants' Motion for Summary Judgment (Doc. #18).[1] Since Plaintiff is appearing pro se,

---

[1] The Court will hereinafter refer to the Exhibits (Doc. #18) as "Ex."

the Court advised him of the provisions of Fed. R. Civ. P. 56.  See Order (Doc. #10).  On November 24, 2009, Plaintiff filed his sworn Response and Declaration in Opposition to Defendants' Motion for Summary Judgment (Doc. #21) (hereinafter Response) and Appendix (Doc. #21).[2]

On February 9, 2010, Defendant Bell's Notice of Adoption and Incorporation of the Motion for Summary Judgment (Doc. #24) was filed.  Plaintiff did not submit a separate response to this motion.  Under these circumstances, the Court construes Plaintiff's Sworn Response and Declaration in Opposition to Defendants' Motion for Summary Judgment (Doc. #21) and Appendix (Doc. #21) to be a response to the motions for summary judgment, Docs. #18 and #24.

## II. Standard of Review

"[W]hen considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged by in the complaint as true."  Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citation omitted).  To survive a motion to dismiss, Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

---

[2] In his response, Plaintiff addressed the claims against all three Defendants, B. Hawkins, R. Bell and D. Askew, and submitted a sworn declaration.

On the other hand, "[s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Crawford v. Carroll, 529 F.3d 961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56(c) and Wilson v. B/E/Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004)). "The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1313 (11th Cir. 2007) (citations omitted).

> "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324, 106 S.Ct. 2548).[3]

Id. at 1314; see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves").

---

[3] Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

## III. Plaintiff's Allegations and Claims

Plaintiff makes the following allegations in his Complaint. On February 4, 2008, Defendants Hawkins, Bell and Askew were employed at Union Correctional Institution (hereinafter UCI) as correctional officers and assigned to S-Dorm, where Plaintiff was confined as a patient in the Transitional Care Unit. Complaint at 8. On that date, Plaintiff was attending group therapy, conducted by Dr. Walker, in the day room area of S-Dorm. Id. Plaintiff was in full restraints, including leg shackles, a waist chain and handcuffs. Id. The waist chain looped through the handcuffs, with a black box attached to the middle of the handcuffs binding Plaintiff's wrists in front of him and preventing the extension of his arms. Id. at 8-9.

At the conclusion of group therapy, the Defendants escorted Plaintiff back to his cell. Id. at 9. Upon arriving at Plaintiff's cell, Defendant Hawkins said: "Remember me? I told you I was going to get you for running that, didn't I?" Id. Defendant Hawkins ordered Plaintiff to enter his cell and kneel on the bed. Plaintiff complied, and Hawkins removed the leg shackles. Id. Defendant Hawkins then proceeded to exit the cell, along with Defendants Bell and Askew. Id. Plaintiff stopped Defendant Hawkins, stating, "You guys still haven't removed the waist chain or the handcuff cover box[.]" Id. Defendant Hawkins responded:

"We don't take orders from an inmate, plus I want to show you a trick." Id.

After closing the cell door, Defendant Hawkins hooked the "steel snatch cord," which was still attached to Plaintiff's handcuffs, to the cell door handle by the waist chain. Id. The snatch cord is used to prevent the prisoner from snatching his handcuffed wrists away from the officers before the handcuffs are removed. Id. at 9-9(a). Defendant Hawkins attempted to remove the waist chain from around Plaintiff through the handcuff port at the cell door, but he was unsuccessful in doing so. Id. at 9(a).

At that point, Defendant Hawkins yanked the snatch cord extremely hard. Id. The snatch cord was still attached to the handcuffs and still secured to the cell door handle by the waist chain. Id. Plaintiff cried out in pain, and by reflex, jerked back away from Defendant Hawkins. Id. In reaction, Defendants Bell and Askew, still present outside the cell door, joined Defendant Hawkins in grabbing the snatch cord. Id. Using their combined force, the Defendants pulled the snatch cord in an attempt to snatch Plaintiff's handcuffed wrists through the handcuff port, notwithstanding the fact that the handcuffs were still attached to the waist chain, which was still secured around Plaintiff's waist. Id. By Defendants yanking the snatch cord with their combined strength, Plaintiff's hands and right elbow were lacerated, causing profuse bleeding. Id. Defendant Hawkins noticed the blood gushing

onto the flap of the handcuff port and onto the floor.  <u>Id</u>.  He responded by releasing his grip from the snatch cord and running off to summon the dormitory supervisor, Lt. Turner.  <u>Id</u>.

A portable use of force video camcorder was retrieved to record Plaintiff being escorted to the Urgent Care Annex and to record his treatment.  <u>Id</u>.  Plaintiff received five surgical sutures to his right hand, two surgical sutures to his right elbow and six surgical sutures to his left hand.  <u>Id</u>. at 9(b).  The stitches had to be repaired due to loosening and bleeding.  <u>Id</u>.  Plaintiff's right hand was placed in a protective cast, which was left on for approximately three weeks.  <u>Id</u>.  Antibiotics were prescribed and pain medication was administered.  <u>Id</u>.  Additional pain medication was provided after the stitches were removed, two weeks later.  <u>Id</u>.  Seven months after the injury, Plaintiff had pain and numbness.  <u>Id</u>.  He sought medical treatment at UCI.  <u>Id</u>.  As a result of his injuries, Plaintiff had difficulty writing, holding and lifting objects or controlling the complete movement of both his hands and right arm.  <u>Id</u>.

Prior to group therapy, Plaintiff and the other prisoners attending group therapy were strip searched.  <u>Id</u>.  No weapons or other contraband were found on Plaintiff or the other prisoners during the strip search.  <u>Id</u>.  Plaintiff was placed in full restraints prior to group therapy.  <u>Id</u>. at 9(c).  The day room is

a secluded area with unobstructed glass windows for the officers to supervise the prisoners during therapy.  Id.

Dr. Walker told the Defendants that Plaintiff had publicly masturbated during group therapy.  Id.  She told the Defendant to "take care of Plaintiff," which Plaintiff construed to mean punish him.  Plaintiff did not threaten to stab or attack anyone, even though the Defendants alleged he did so after returning to his cell in full restraints.  Id.  Plaintiff was not capable of carrying out an attack on the Defendants while in full restraints.  Id.  The Defendants suffered no injuries.  Id.  Plaintiff suffered permanent scars and disfigurement.  Id.

Plaintiff's inquiry about the lack of removal of the waist chain and black box was not an express refusal to surrender the restraints.  Id.  He inquired because he was alarmed that the Defendants apparently intended to remove the restraints through the handcuff port of the closed cell door, which was not the normal removal procedure.  Id.

As relief, Plaintiff seeks a declaratory judgment that the Defendants violated his constitutional rights under the Eighth Amendment.  He also seeks nominal, compensatory and punitive damages.

In support of his Complaint, Plaintiff has submitted a Memorandum of Law as well as exhibits.  Plaintiff's Response (Doc. #21) contains a sworn declaration (hereinafter Declaration).  The

Declaration contains additional allegations, as follows. Plaintiff states he was removed from group therapy for "allegedly masturbating," not that he was simply escorted back to his cell at the end of the session as related in his Complaint. Declaration at 3-4. He adds:

> At no time did Plaintiff threaten to stab an officer, nor was Plaintiff agitated and belligerent while being escorted to his cell, nor did Plaintiff shout obscenities, and nor, did Plaintiff refuse to put his hands through the handcuff port, also Plaintiff did not resist by pulling back in an attempt to break Officer Hawkins['] hold on the chain.

Id. at 5.

### IV. Law and Conclusions

### A. Eighth Amendment Claim of Excessive Use of Force Against Defendants Hawkins, Bell and Askew

The Eleventh Circuit has set forth the standard for an excessive use of force claim for an inmate:

> In both Fourteenth and Eighth Amendment excessive force claims, whether the use of force violates an inmate's constitutional rights "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) (establishing the standard for an Eighth Amendment excessive force claim); see Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (applying the Whitley test in a Fourteenth Amendment excessive force case). If force is used "maliciously and sadistically for the very purpose of causing harm," then it necessarily

> shocks the conscience. See Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987) (stating that the Eighth and Fourteenth Amendments give equivalent protections against excessive force). If not, then it does not.

Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007) (per curiam).

In response to the allegations raised in the Complaint, the Defendants have presented the following. In support of Defendants' Motions for Summary Judgment (Docs. #18 & #24), Defendants have submitted their own Affidavits, Ex. C, Ex. D, Exhibit A, Bell Affidavit, filed February 9, 2010; the Affidavit of P. Walker, Mental Health Specialist at UCI, Ex. B; the Affidavit of Albert Turner, Captain (formerly Lt.), UCI, Ex. G; the Affidavit of Tommy Robinson, Sgt., UCI, Ex. H; the Affidavit of Doris Ryder, Senior Registered Nurse Supervisor, Ex. J; and the Affidavit of Jerry Blalock, Colonel, UCI, Ex. M. Incident Reports and Reports of Force Used have also been submitted to the Court. Ex. E.

Plaintiff was charged with a disciplinary violation of spoken threats for threatening to stab a correctional officer, and found guilty of the offense. Ex. F. Plaintiff's medical records show that there were lacerations that required sutures. Ex. I, Ex. K., Ex. O, Ex. P. Additionally, Plaintiff's history of disciplinary violations within six months of the Defendants' decision to use the restraint cable to remove the handcuffs includes the following violations: unarmed assault, spoken threats, fighting, lewd or

lascivious exhibition, tampering with a safety device, and battery or attempted battery on a correctional officer. Ex. N.

The Defendants state that they were escorting Plaintiff back to his cell due to his inappropriate and agitated behavior during group therapy. While they were escorting Plaintiff, he continued to be agitated and began shouting obscenities. Officer Hawkins ordered Plaintiff to cease his disorderly behavior, but Plaintiff did not comply. Once in Plaintiff's cell, Defendant Hawkins removed all of the restraints, except the handcuffs. Plaintiff was handcuffed in front. Due to Plaintiff agitated and belligerent behavior, and pursuant to procedure, Defendant Hawkins applied a security chain to the handcuffs, fed the chain through the handcuff port and secured the chain, exited the cell, and secured the door. The security chain utilized was actually the waist chain which had been removed from Plaintiff.

Defendant Hawkins ordered Plaintiff to place his hands through the handcuff port for safe removal of the handcuffs. Plaintiff refused to allow Defendant Hawkins to remove the handcuffs. Plaintiff said that he was going to stab one of the officers. Defendant Hawkins again ordered Plaintiff to place his hands through the handcuff port. Plaintiff refused to comply.

After Plaintiff refused to comply with these orders, Defendant Hawkins pulled back on the security chain with both hands and attempted to pull Plaintiff's hands through the handcuff port.

Plaintiff resisted by pulling back in an attempt to break Defendant Hawkins' hold. At that point, Defendants Bell and Askew joined Defendant Hawkins and assisted him by pulling back on the security chain, forcing Plaintiff to extend his hands through the handcuff port. All three officers maintained their hold on the chain after Plaintiff's hands were through the port.

Defendants Bell and Askew maintained control of the chain, while Defendant Hawkins released his hold and attempted to remove the handcuffs from Plaintiff's wrist. Due to an equipment malfunction when the key failed to open the handcuffs, Defendant Hawkins was unable to remove the handcuffs. While attempting to remove the handcuffs, Defendant Hawkins noticed that Plaintiff was injured.

Defendant Hawkins immediately notified Sgt. Robinson of the incident. The medical department was notified of the injury. Sgt. Robinson and Lt. Turner arrived. A video recorder was brought to the cell and taping began. Sgt. Robinson grasped the security chain and instructed Defendants Bell and Askew to release their hold. Plaintiff ceased all resistance. Officer Davis arrived and attempted to remove the handcuffs but was unsuccessful. Officer Davis grasped the security chain, and Sgt. Robinson successfully removed the right hand restraint. Sgt. Robinson secured the handcuffs behind Plaintiff's back. Lt. Turner, Officer Davis and Sgt. Robinson entered the cell and secured the remainder of the

restraints. Nurse Mobley, RN, entered the cell and conducted a visual assessment of Plaintiff's condition. Plaintiff was referred to the urgent care center for treatment and was treated there by Nurse Ryder. Plaintiff had lacerations and abrasions to the right hand, right forearm, and left upper hand. He had full range of motion in both hands. There was no notation in the medical records that Plaintiff complained of abuse by staff. Plaintiff was returned to his cell, and taping was concluded.

Plaintiff received a disciplinary report for spoken threats. A mental health official found Plaintiff competent to receive a disciplinary report. Plaintiff refused to appear at the hearing and was found guilty. The next day, Plaintiff went to medical complaining that he had been abused by staff. The sutures in the right hand were loose and bleeding. A splint was applied, and Plaintiff was told to keep his hand and arm elevated.

Restraint cables are used by correctional staff when: (1) the inmate has an assault history on staff or other inmates within the past six months; (2) the inmate's observed behavior at the time of restraint application is bizarre and/or appears unpredictable; (3) there is a documented threat to injure staff or other inmates within the past six months; (4) there is a documented incident of the inmate snatching the restraints from the officer's grasp; or (5) any other time the housing officer, supervisor, or shift supervisor deems the subject a security risk or threat to staff.

The main purpose of the use of the restraint cable is officer safety and return of the handcuffs from the inmate. It was proper procedure to use the restraint cable on February 4, 2008.

An x-ray of Plaintiff's right hand was negative, other than soft tissue swelling. The medical record does not show lingering problems with Plaintiff's hands or wrists as a direct result of the February 4, 2008 use of force.

This Court has before it two motions for summary judgment. Since Plaintiff and Defendants have submitted affidavits which plainly contradict each other's assertions with respect to whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm, the Defendants' motions for summary judgment should be denied with respect to Plaintiff's claims of excessive use of force upon him by the Defendants. In reviewing a motion for summary judgment, "[i]f there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor." Allen v. Board of Public Educ. for Bibb County, 495 F.3d at 1314 (citing Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003)). If Plaintiff's evidence is to be believed, there was no need to apply force and the force was utilized "maliciously and sadistically for the very purpose of causing harm." Cockrell v. Sparks, 510 F.3d at 1311

(quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). Thus, Defendants' Motions for Summary Judgment will be denied with respect to Plaintiff's Eighth Amendment claim of excessive use of force against Defendants Hawkins, Bell and Askew because there are genuine issues of material fact that prevent the entry of summary judgment.

## B. Eleventh Amendment Immunity

With regard to Defendants claim of Eleventh Amendment immunity, it is well established that a suit against a defendant governmental officer in his official capacity is the same as a suit against the entity that employs the officer. See McMillian v. Monroe County, 520 U.S. 781, 785 n.2 (1997); Kentucky v. Graham, 473 U.S. 159, 165 (1985). In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986) (per curiam), the Eleventh Circuit noted:

> It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in section 1983 damage suits. Quern v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct. 1139, 1144-45, 59 L.Ed.2d 358 (1979). Furthermore, after reviewing specific provisions of the Florida statutes, we recently concluded that Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages. See Gamble, 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the Secretary of the Florida Department of Corrections was immune from suit in his official capacity. Id. Insofar as Plaintiff seeks monetary damages from Defendants in their official capacities, the Eleventh

Amendment clearly bars suit.  Plaintiff may not seek monetary damages against the Defendants in their official capacities.

Therefore, it is now

**ORDERED:**

1. Defendants' Motions for Summary Judgment (Docs. #18 & #24) are **DENIED**, except with respect to the Eleventh Amendment immunity claim, and Plaintiff may not recover monetary damages against the Defendants in their official capacities.

2. Defendants shall answer the Complaint within **TWENTY-EIGHT (28) DAYS** from the date of this Order.

**DONE AND ORDERED** at Jacksonville, Florida, this ___21st___ day of ___April_____, 2010.

*Howell W. Melton*
HOWELL W. MELTON
United States District Judge

sa 4/12
c:
John T. Chestnut
Ass't A.G. (Neff)
Ass't A.G. (Hiers)